1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DANNY R. GARCIA,                           No.  2:13-cv-1952 JAM AC P

12              Plaintiff,

13        v.                                     FINDINGS AND RECOMMENDATIONS

14   C/O HEATH, et al.,

15              Defendants.

16

17        I.    Introduction

18        Plaintiff Danny Garcia is a state prisoner under the custody of the California Department

19   of Corrections and Rehabilitation (CDCR), currently incarcerated at the Correctional Training

20   Facility in Soledad, who proceeds pro se and in forma pauperis with this civil rights action filed

21   pursuant to 42 U.S.C. § 1983.  This action proceeds on plaintiff's First Amended Complaint

22   (FAC), filed on September 9, 2014.[1]  See ECF No. 17.

23        Upon screening the FAC pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C.

24

25   [1]  Unless otherwise noted, petitioner's filing dates referenced herein are based on the prison
     mailbox rule, pursuant to which a document is deemed served or filed on the date a prisoner signs
26   the document (or signs the proof of service, if later) and gives it to prison officials for mailing.
     See Houston v. Lack, 487 U.S. 266 (1988) (establishing prison mailbox rule); Campbell v. Henry,
27   614 F.3d 1056, 1059 (9th Cir. 2010) (applying the mailbox rule to both state and federal filings
     by prisoners).
28

                                              1

1  1915A(a), this court found the allegations therein sufficient to state cognizable retaliation claims

2  against the following six defendants:  C. Heath, E. Bradley, V. Vallery, M. Torres, L.T. Perez,

3  and M. Mendoza.  See ECF No. 18.  Presently pending is a motion for summary judgment,

4  premised on the alleged failure of plaintiff to exhaust his administrative remedies, filed by all

5  defendants except Mendoza.  See ECF No. 56.  This matter is referred to the undersigned United

6  States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c).  For the

7  reasons that follow, this court recommends that defendants' motion for summary judgment be

8  granted.

9          II.     <u>Background</u>

10       In the FAC, plaintiff alleges that defendant Mendoza harassed and intimidated plaintiff

11  based on his commitment offense, and incited the other defendants to do the same.  Plaintiff

12  alleges that each of the defendants "took adverse action against plaintiff by subjecting him to

13  repeated and frequent cell searches, and throwing, scattering, stepping on, confiscating, and

14  destroying plaintiff's personal property."  FAC, ¶ 28.  Plaintiff alleges that defendants took these

15  adverse actions because of plaintiff's "several 602s and the complaint he made to the sergeant,"

16  defendants' "immediate supervisor."  Id. at ¶ 30.  Plaintiff alleges that "[d]efendants' adverse

17  actions, individually and severally, against plaintiff were calculated to dissuade, discourage,

18  prevent, and chill plaintiff's exercise of his First Amendment rights."  Id.

19       Defendants answered the complaint on March 17, 2015.  ECF No. 22.  Discovery

20  proceeded through August 28, 2015.[2]  ECF No. 30.  On August 28, 2015, five defendants –

21  defendants Heath, Bradley, Vallery, Torres and Perez – filed the pending motion,[3] seeking

22  summary judgment on the ground that plaintiff failed to exhaust his administrative remedies on

23  his retaliation claims against them.  ECF No. 41.  Plaintiff filed an opposition, ECF No. 46, and

24  ////

25

26  [2]  The court denied the parties' respective requests to extend the discovery deadline pending a
decision on defendants' motion for summary judgment.  See ECF Nos.48, 49, 61, 66.

27  [3]  The court vacated defendants' earlier-filed motion for summary judgment to permit plaintiff an
opportunity to prepare and file an adequate opposition.  See ECF No. 55.

28

defendants filed a reply, ECF No. 47.  Thereafter, with the court's authorization, ECF No. 49, plaintiff filed a surreply, ECF No. 50.

### III.   Legal Standards

#### A.   Legal Standards for Exhausting Administrative Remedies

"The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions."  Ross v. Blake, 136 S. Ct. 1850, 1854-55 (June 6, 2016) (quoting 42 U.S.C. § 1997e(a)).  "There is no question that exhaustion is mandatory under the PLRA[.]"  Jones v. Bock, 549 U.S. 199, 211 (2007) (citation omitted) (cited with approval in Ross, 136 S. Ct. at 1856).  The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."  Jones, 549 U.S. at 204.  The "exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims."  Rhodes v. Robinson, 621 F.3d 1002, 1004 (9th Cir. 2010); McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam) ("a prisoner does not comply with [the exhaustion] requirement by exhausting available remedies during the course of the litigation").

Regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as some remedy remains available.  "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'  Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance."  Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (original emphasis) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).  "The only limit to § 1997e(a)'s mandate is the one baked into its text:  An inmate need exhaust only such administrative remedies as are 'available.'"  Ross, 136 S. Ct. at 1862.

Thus, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"  Ross, 136 S. Ct. at 1859 (quoting Booth, 532 U.S. at 738).  The Supreme Court has clarified that there are only "three kinds of circumstances in which an administrative remedy, although officially on the

3

1    books, is not capable of use to obtain relief." <u>Ross</u>, at 1859.  These circumstances are as follows:

2    (1) the "administrative procedure . . . operates as a simple dead end – with officers unable or

3    consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme

4    . . . [is] so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary

5    prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from

6    taking advantage of a grievance process through machination, misrepresentation, or intimidation."

7    <u>Id.</u> at 1859-60 (citations omitted).  Other than these circumstances demonstrating the

8    unavailability of an administrative remedy, the mandatory language of 42 U.S.C. § 1997e(a)

9    "foreclose[es] judicial discretion," which "means a court may not excuse a failure to exhaust,

10   even to take [special] circumstances into account."  <u>Ross</u>, 136 S. Ct. at 1856-57.

11          The PLRA also requires that prisoners, when grieving their appeal, adhere to CDCR's

12   "critical procedural rules."  <u>Woodford v. Ngo</u>, 548 U.S. 81, 91 (2006).  "[I]t is the prison's

13   requirements, and not the PLRA, that define the boundaries of proper exhaustion."  <u>Jones</u>, 549 at

14   218.  In 2012, when plaintiff filed his relevant grievance, CDCR regulations required, as now,

15   that the prisoner "list all staff member(s) involved and describe their involvement in the issue."

16   Cal. Code Regs. tit. 15, § 3084.2(a)(3).  This instruction further provides, <u>id.</u>:

17                   To assist in the identification of staff members, the inmate or
                     parolee shall include the staff member's last name, first initial, title
18                   or position, if known, and the dates of the staff member's
                     involvement in the issue under appeal.  If the inmate or parolee
19                   does not have the requested identifying information about the staff
                     member(s), he or she shall provide any other available information
20                   that would assist the appeals coordinator in making a reasonable
                     attempt to identify the staff member(s) in question.
21

22   In addition, prisoners are directed to "state all facts known and available to him[] regarding the

23   issue being appealed[.]"  <u>Id.</u> § 3084.2(a)(4).

24          In 2012, as now, an appeal could be "rejected" for several reasons, including the failure to

25   submit an appeal "on the departmentally approved appeal forms," or "at an inappropriate level

26   bypassing required lower level(s) of review."  <u>Id.</u> § 3084.6(b)(14), (15).  An appeal can also be

27   "cancelled" for several reasons, including "[t]he inmate . . . continues to submit a rejected appeal

28   while disregarding appeal staff's previous instructions to correct the appeal," and the "[t]ime

4

1   limits for submitting the appeal are exceeded even though the inmate or parolee had the

2   opportunity to submit within the prescribed time constraints."  Id., § 3084.6(c)(3), (4).

3        The Ninth Circuit Court of Appeals recently held that if a prisoner fails to comply with a

4   prison's procedural requirements in pursuing his appeal but prison officials address the merits of

5   the appeal nevertheless, then the prisoner is deemed to have exhausted his available

6   administrative remedies.  See Reyes v. Smith, 810 F. 3d 654 (9th Cir. Jan. 12, 2016).  "[I]f prison

7   officials ignore the procedural problem and render a decision on the merits of the grievance at

8   each available step of the administrative process," then the prisoner has exhausted "such

9   administrative remedies as are available" under the PLRA.  Id. at 658.

10       Failure to exhaust administrative remedies is an affirmative defense that must be raised by

11   defendants and proven on a motion for summary judgment.  See Albino v. Baca, 747 F.3d 1162,

12   1172 (9th Cir. 2014), cert. denied sub nom. Scott v. Albino, 135 S. Ct. 403 (2014).

13           B.      Legal Standards for Summary Judgment

14       The Ninth Circuit has laid out the analytical approach to be taken by district courts in

15   assessing the merits of a motion for summary judgment based on the alleged failure of a prisoner

16   to exhaust his administrative remedies.  As set forth in Albino, 747 F.3d at 1172 (citation and

17   internal quotations omitted):

18       [T]he defendant's burden is to prove that there was an available
         administrative remedy, and that the prisoner did not exhaust that
19       available remedy. . . . Once the defendant has carried that burden,
         the prisoner has the burden of production.  That is, the burden shifts
20       to the prisoner to come forward with evidence showing that there is
         something in his particular case that made the existing and
21       generally available administrative remedies effectively unavailable
         to him.  However, . . . the ultimate burden of proof remains with the
22       defendant.

23       Summary judgment is appropriate when the moving party "shows that there is no genuine

24   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

25   Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of

26   proving the absence of a genuine issue of material fact."  Nursing Home Pension Fund, Local 144

27   v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010)

28   (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish

1   this by "citing to particular parts of materials in the record, including depositions, documents,

2   electronically stored information, affidavits or declarations, stipulations (including those made for

3   purposes of the motion only), admission, interrogatory answers, or other materials" or by showing

4   that such materials "do not establish the absence or presence of a genuine dispute, or that the

5   adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56

6   (c)(1)(A), (B).

7       When the non-moving party bears the burden of proof at trial, "the moving party need

8   only prove that there is an absence of evidence to support the nonmoving party's case." Oracle

9   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

10  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

11  against a party who fails to make a showing sufficient to establish the existence of an element

12  essential to that party's case, and on which that party will bear the burden of proof at trial. See

13  Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the

14  nonmoving party's case necessarily renders all other facts immaterial." Id. In such a

15  circumstance, summary judgment should be granted, "so long as whatever is before the district

16  court demonstrates that the standard for entry of summary judgment ... is satisfied." Id. at 323.

17      If the moving party meets its initial responsibility, the burden then shifts to the opposing

18  party to establish that a genuine issue as to any material fact actually does exist. See Matsushita

19  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the

20  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

21  of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

22  admissible discovery material, in support of its contention that the dispute exists. See Fed. R.

23  Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. Moreover, "[a] [p]laintiff's verified complaint

24  may be considered as an affidavit in opposition to summary judgment if it is based on personal

25  knowledge and sets forth specific facts admissible in evidence." Lopez v. Smith, 203 F.3d 1122,

26  1132 n.14 (9th Cir. 2000) (en banc).[4]

27  _____

28  [4]  In addition, in considering a dispositive motion or opposition thereto in the case of a pro se (continued…)

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U .S. at 587 (citations omitted).

In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the

---

plaintiff, the court does not require formal authentication of the exhibits attached to plaintiff's verified complaint or opposition. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made admissible at trial may be considered on summary judgment); see also Aholelei v. Hawaii Dept. of Public Safety, 220 Fed. Appx. 670, 672 (9th Cir. 2007) (district court abused its discretion in not considering plaintiff's evidence at summary judgment, "which consisted primarily of litigation and administrative documents involving another prison and letters from other prisoners" which evidence could be made admissible at trial through the other inmates' testimony at trial); see Ninth Circuit Rule 36-3 (unpublished Ninth Circuit decisions may be cited not for precedent but to indicate how the Court of Appeals may apply existing precedent).

1    nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation

2    omitted).

3         In applying these rules, district courts must "construe liberally motion papers and

4    pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly."

5    Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  However, "[if] a party fails to properly

6    support an assertion of fact or fails to properly address another party's assertion of fact, as

7    required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion

8    . . . ." Fed. R. Civ. P. 56(e)(2).

9         If a court concludes that a prisoner failed to exhaust his available administrative remedies,

10   the proper remedy is dismissal without prejudice.  See Jones, 549 U.S. at 223-24; Lira v. Herrera,

11   427 F.3d 1164, 1175-76 (9th Cir. 2005).

12        IV.    Undisputed Facts

13        The court finds the following facts undisputed by the parties:[5]

14    • At all relevant times, plaintiff was a prisoner in the custody of CDCR.  From

15   December 10, 2011 to May 2013, plaintiff was incarcerated at Mule Creek State Prison (MCSP).

16   Thereafter he was transferred to the Correctional Training Facility, where he remains today.

17    • During the relevant period, defendants Heath, Bradley and Torres were employed by

18   CDCR as correctional officers at MCSP.

19    • During the relevant period, defendant Perez was initially employed by CDCR as a

20   Facilities Lieutenant at MCSP; in November 2012, Perez became a Health Care Access

21   Lieutenant at MCSP.

22    • During the relevant period, defendant Vallery was employed by CDCR as a

23   correctional officer at MCSP; in July 2013, Vallery was transferred to another facility.

24    • During the relevant period, plaintiff submitted two administrative appeals at MCSP

25

26   _____
     [5]  These facts are based on defendants' statement of undisputed facts, ECF No. 56-3, declarations
27   and exhibits, ECF Nos. 56-4 and 56-5, and review of plaintiff's verified FAC, ECF No. 17,
     opposition and authorized surreply, ECF Nos. 64, 67.  Plaintiff has not filed a declaration, and
     neither of his responsive documents are verified.
28

that were accepted and adjudicated at the Third Level of Review.  See Decl. of M. Voong, Acting

Chief of CDCR's Office of Appeals (Voong Decl.), ¶¶ 7-9, Exs. 2-3 (ECF No. 56-6 at 1-50).

• The first appeal, Appeal Log No. MCSP-C-11-00107, reflected plaintiff's challenge to

a Rules Violation Report (RVR) issued against him on November 26, 2010, relating to a fight

between plaintiff and his cellmate.  This appeal did not address any of plaintiff's allegations

against defendants Mendoza, Heath, Bradley, Vallery, Torres or Perez, see Voong Decl. ¶ 9, Ex.

2; Decl. of M. Elorza, MCSP Appeals Coordinator (Elorza Decl.), ¶¶ 10-11, Ex. 2, and is

therefore not relevant to the pending motion.

• The second fully exhausted appeal was designated staff complaint Appeal Log No.

MCSP-C-12-01396.  Pursuant to that appeal, plaintiff alleged that defendant Mendoza was

causing plaintiff "personal discomfort that may lead to violence against me," based on her

"personal dislike" of plaintiff due to his commitment offense.  Plaintiff also alleged that Mendoza

had "enlisted the assistance of other officers in her continued behavior," referred to as Mendoza's

"co-conspirators."  See ECF No. 60 at 47-8; ECF No. 56-4 at 36-9 (Elorza Decl., Ex. 3); ECF No.

56-5 at 28-31 (Voong Decl., Ex. 3).

• In addition to these two fully exhausted appeals, during the relevant period plaintiff

submitted six appeals that were screened out at First Level Review.  See ECF No. 56-4 at 4, 7,

52-63 (Elorza Decl., ¶ 12, Exs. 1, 4-9).  Of these six appeals, only MCSP-C-12-00665, submitted

by plaintiff on December 13, 2011, is relevant to his claims against some of the defendants in this

case.[6]  This appeal challenges the allegedly retaliatory searches of plaintiff's cell by defendants

Heath and Bradley, at the direction of Mendoza.  See ECF No. 60 at 30-1.

• During the relevant period, and subject to possible computer system errors,[7] plaintiff

---

[6]  The other five appeals screened out at First Level, which are not relevant to the instant case, are:  1) Appeal Log No. MCSP-C-12-01545; (2) Appeal Log No. MCSP-C-12-01986; (3) Appeal Log No. MCSP-C-13-00558; (4) Appeal Log No. MCSP-C-13-00941; and (5) Appeal Log No. MCSP-C-13-01013.

[7]  MCSP Appeals Coordinator M. Elorza has described at length the short-term problems with CDCR's computer system, viz., the Inmate/Parolee Appeals Tracking System (IATS).  See ECF No. 56-4 at 2-5 (Elorza Decl. ¶¶ 5, 7-8).  Due to these errors, it appears that any appeal of plaintiff's submitted or processed between September 19, 2014 and March 3, 2015 may not have (continued…)

1    did not submit any additional appeals at MCSP; nor did he submit any appeal alleging that a prior

2    appeal was canceled by the MCSP Office of Appeals, or by any individual Appeals Coordinator.

3    See ECF No. 56-4 at 3-5 (Elorza Decl. ¶¶ 7-8, 15-6).

4         V.    Analysis

5              A.    Framework

6         Applying the analytical framework set forth in Albino, defendants bear the initial burden

7    of demonstrating that plaintiff had an available administrative remedy to grieve his retaliation

8    claims against defendants Heath, Bradley, Vallery, Torres and Perez, but that plaintiff did not

9    exhaust that remedy.  See Albino, 747 F.3d at 1172.

10        Defendants rely on the fact that plaintiff exhausted his retaliation claim against Mendoza

11   through MCSP's administrative grievance process to contend that this process was also available

12   for plaintiff to exhaust his related retaliation claims against the remaining defendants.  Plaintiff

13   does not refute that he exhausted Appeal Log No. MCSP-C-12-01396 as to defendant Mendoza,

14   but asserts that his attempts to exhaust his claims against the other defendants were thwarted by

15   prison officials.  These statements, together with plaintiff's verified statement on the face of the

16   operative FAC that he exhausted his administrative remedies before commencing this action, see

17   FAC, ECF No. 17 at 2, support a finding that MCSP's administrative appeals process was

18   generally available to plaintiff to pursue his retaliation claims against all of the defendants.

19        The burden now shifts to plaintiff "to come forward with evidence showing that there is

20   something in his particular case that made the existing and generally available administrative

21   remedies effectively unavailable to him."  Albino, 747 F.3d at 1166.

22        Plaintiff asserts that MCSP's administrative remedies were effectively unavailable to

23   exhaust his claims against the other defendants because prison officials:  (1) improperly rejected

24   plaintiff's attempts to exhaust his first appeal against the moving defendants, Appeal Log No.

25   _____

26   been included in this review.  However, because plaintiff commenced this action in September
     2013, and plaintiff does not contest defendants' account of the administrative processing of

27   plaintiff's two relevant appeals, the IATS problems do not appear to be relevant to the matters
     currently before this court.

28

1   MCSP-C-12-00665; and (2) improperly ignored plaintiff's efforts to include all of the defendants

2   in his Appeal Log No. MCSP-C-12-01396.  Plaintiff contends generally that prison officials

3   failed to properly process his appeals, and failed to meet their responsibility to assist him in

4   identifying the additional defendants, thereby denying him "process" and "due process."

5        Plaintiff's arguments, as framed in his briefing, suggest the third circumstance recognized

6   by the Supreme Court to support a finding that a prison's administrative remedies are effectively

7   unavailable when "prison administrators thwart inmates from taking advantage of a grievance

8   process through machination, misrepresentation, or intimidation."[8]  Ross, 136 S. Ct. at 1860.

9        Defendants contend that no errors were made in the processing of either of plaintiff's

10  appeals.[9]  They also generally assert that "[p]laintiff attempts to mislead this Court by attaching

11  unsigned, and undated, Rights and Responsibility Statements [staff complaints][10] to support his

12  argument that he tried to exhaust his administrative remedies with Appeals MCSP-12-00665 and

13  MCSP-12-011396."  ECF No. 63 at 3.

14  _____

15  [8]  Plaintiff's arguments do not implicate either of the other two bases for excusing exhaustion
    under the Supreme Court's decision in Ross, viz., that the administrative procedure "operates as a
16  simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved
    inmates," or that the "administrative scheme . . . [is] so opaque that it becomes, practically
17  speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands."
    Ross, 136 S. Ct. at 1859.
18  [9]  The court notes that a prisoner's First Amendment right to petition the government for the
19  redress of grievances includes the right to pursue available prison administrative remedies.  See
    e.g. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005).  However, "[t]here is no legitimate
20  claim of entitlement to a grievance procedure," Mann v. Adams, 855 F.2d 639, 640 (9th Cir.
    1988), cert. denied, 488 U.S. 898 (1988).  Because prisoners are not entitled to prison grievance
21  procedures as a matter of course, a claim that prison officials failed to comply with grievance
    procedures or failed to resolve a particular grievance in a favorable manner is not cognizable
22  under section 1983.  See e.g. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (failure to
23  process plaintiff's grievances is not actionable under Section 1983).
    [10]  An administrative appeal alleging misconduct by a correctional official must be accompanied
24  with a "staff complaint" (also known as a "citizen complaint" or "civilian complaint") signed by
    the prisoner.  See Cal. Code Regs. tit. 15, § 3084.9(i)(1) ("Any appeal alleging misconduct by a
25  departmental peace officer as defined in subsection 3291(b) shall be accompanied by the
    subsection 3391(d) Rights and Responsibility Statement.").  The "Rights and Responsibilities
26  Statement" form (CDCR Form 1858) is authorized by California Penal Code § 148.6, as amended
27  by Assembly Bill No. 1953, Chap. 99, Sec. 2 (July 25, 2016) (substituting "citizen" with
    "civilian").

28

B.      Appeal Log No. MCSP-C-12-00665

1.      Additional Facts[11]

Signed by plaintiff on December 13, 2011, this appeal alleges that on December 10, 2011, defendants Bradley and Heath, at the direction of Mendoza, conducted a retaliatory search of plaintiff's cell, confiscated items, and left his cell in disarray.  See ECF No. 60 at 30-1.  Plaintiff alleged that "Mendoza lied to Bradley[,] and Heath has always done her dirty work."  Id. at 31.  Plaintiff requested that the appeal be immediately directed to the Lieutenant and that such referral "be prompt so that I may contact the Inspector General ASAP."[12]  Id.  Plaintiff has submitted to this court copies of five staff complaints which he alleges he attached to this appeal.  See ECF No. 60 at 32-6.  The first and second staff complaints were signed by plaintiff on December 13, 2011, while the remaining three complaints were signed by plaintiff on June 19, 2012.  None of these staff complaints identify the official to whom it is directed, and none bear the signature of a receiving staff member.  Id.

---

[11]  To analyze plaintiff's challenges to the administrative processing of both relevant appeals, the court has drawn additional facts from the parties' exhibits which are deemed undisputed for purposes of addressing the instant motion.

The court also notes that plaintiff has submitted additional evidence in opposition to defendants' motion for summary judgment that the court finds irrelevant.  This evidence includes the following:

• Miscellaneous partial appeals from 2007 and 2008.  See ECF No. 60 at 150-55 (Pl. Ex. G).

• Another unrelated appeal, prepared at the Correctional Training Facility, signed on October 20, 2014, and file-stamped "received" on October 28, 2014.  See ECF No. 60 at 135-49 (Pl. Ex. F).  Pursuant to this appeal, Appeal Log No. CTF-S-14-01858, plaintiff challenged the allegedly harassing conduct of correctional officer Valadez.  Plaintiff has submitted a copy of the January 1, 2015 Second Level Response, which "partially granted" plaintiff's appeal on the ground that an inquiry into his allegations had been conducted, but concluded that "[s]taff did not violate CDCR policy with respect to the issues raised."  Id. at 140-41.

• Reference to an appeal plaintiff submitted at Centinella State Prison, but "never received any acknowledgement" and later learned "that the prison[']s Inmate Appeals Tracking System (IATS) crashed and lost data."  ECF No. 60 at 2-3.  No date or subject matter for this appeal is noted.  Nevertheless, as earlier noted, see n.7, supra, it appears that any data lost in the IATS crash processed between September 19, 2014 and March 3, 2015 did not impact plaintiff's appeals in this action.

[12]  Plaintiff has submitted a copy of an April 9, 2012 letter addressed to him from the California Office of the Inspector General (OIG), which informed plaintiff that he needed to exhaust his administrative remedies before resubmitting his "complaint" to the OIG.  See ECF No. 60 at 158 (Pl. Ex. H).

Documentation provided both by plaintiff and defendants indicates that this appeal was submitted nearly five months after plaintiff signed it on December 13, 2011.  The face of the appeal bears date stamps indicating that it was received on May 4, 2012, and rejected on May 9, 2012.  ECF No. 60 at 30-1.  These dates are consistent with a notice directed to plaintiff on May 9, 2012, informing him that his May 4, 2012 appeal was rejected because not submitted on the appropriate form, pursuant to Cal. Code Regs. tit. 15, § 3084.6(b)(14) (authorizing rejection of an appeal that is "not submitted . . . on the departmentally approved appeal forms").  Id. at 38.  A handwritten notation on the notice indicates that plaintiff "[s]ubmitted a *copy* of this appeal," id. (emphasis added); the formal notice informed plaintiff that his allegations "[m]ust be submitted on an *original* Appeal," id. (emphasis added).  See Cal. Code Regs. tit. 15, § 3084.2(b) ("The inmate . . . shall submit the signed original appeal forms and supporting documents.").[13]  Plaintiff was also informed that "staff misconduct allegations cannot be combined with other issues,"[14] and that he needed to attach the subject May 9, 2012 notice to "your new CDCR 602 for your staff allegation issue to support your appeal time constraints."[15]  ECF No. 60 at 38.

Plaintiff timely resubmitted the appeal on May 17, 2012.  See ECF No. 60 at 37.  However, the record does not indicate – and plaintiff does not aver – whether this appeal was the original, whether it included the May 9, 2012 notice to "support [his] appeal time constraints," or whether plaintiff proffered staff complaints with the appeal.  By notice issued June 7, 2012, plaintiff was informed that the appeal was cancelled because, "[y]ou have not met the time constraints to file an appeal regarding 12/10/2011 cell searches."  Id.; see also ECF No. 56-4 at

---

[13]  Cal. Code Regs. tit. 15, § 3084.2(b) further provides:  "If originals are not available, copies may be submitted with an explanation why the originals are not available. The appeals coordinator shall have the discretion to request that any submitted copy is verified by staff."

[14]  See Cal. Code Regs. tit. 15, § 3084.9(i)(2) ("When an appeal is accepted alleging staff misconduct that also includes any other issue(s), the appeals coordinator at the time the appeal is accepted as a staff complaint shall notify the inmate or parolee that any other appeal issue(s) may only be appealed separately and therefore resubmission of those issues is required if the intention is to seek resolution of such matters. . . .").

[15]  See Cal. Code Regs. tit. 15, § 3084.6(a)(2) (appeal rejected pursuant to Section 3084.6(b) "may later be accepted if the reason noted for the rejection is corrected and the appeal is returned by the inmate . . . to the appeals coordinator within 30 calendar days of rejection").

61.  The cancellation was made pursuant to Cal. Code Regs. tit. 15, § 3084.6(c)(4) ("Time limits for submitting the appeal are exceeded even though you had the opportunity to submit within the prescribed time constraints.").

It appears that plaintiff thereafter twice attempted to resubmit this appeal.  On July 10, 2012, he was advised that his appeal documents submitted June 29, 2012 were being returned to him because the appeal had already been cancelled, ECF No. 60 at 28:

> It has been determined that you are attempting to submit an appeal that has been previously cancelled.  Pursuant to CCR 3084.4 you are advised that this is considered misuse or abuse of the appeals process.  Repeated violations may lead to your being placed on appeal restriction as described in CCR 3084.4(g).

Similarly, on November 9, 2012, plaintiff was informed by the CDCR Office of Appeals that it conducted only Third Level Reviews, and that, subject to the above-noted warning, it has "been determined that you are attempting to submit an appeal that has been previously cancelled."  Id. at 29.

Plaintiff relies on the notices issued in response to this appeal to assert that he was "denied process a total of four times."  ECF No. 60 at 2.  He contends that prison officials improperly rejected his attempts to exhaust this appeal, rendering his administrative remedies effectively unavailable.  See generally, id. at 15-6.

## 2.    Analysis

Before this court, plaintiff describes the processing of this appeal, and its impact on his decision to pursue Appeal Log No. MCSP-C-12-01396 (discussed infra), as follows (sic):

> [The appeal] states false allegations from Mendoza wich led to Bradley to enter plaintiff's cell and take items wich led to informing a Sgt. wich led to Heath to re-enter the cell and take personal property and leave the cell in dissaray in retaliation.  This is clearly staff misconduct, but the appeal is sent back stating it is not a cell search complaint, it is a staff complaint, then it's sent back with a threat of appeal restriction if I do not stop sending appeals in.  The appeals coordinator (J.D. Lozano) improperly screened the 602 grievance.  Prisoner officials can render administrative remedies effectively unavailable by improperly screening a prisoner's grievances.
>
> . . . . Including more than one defendant (conspiracy) in an appeal obviously meets more resistance.    Petitioner tried two times to enter an appeal with multiple staff involved.  The first appeal, #12-

14

1
2
3
4
5

> 00665-staff complaint was denied with a threat, plaintiff decided to start another one naming only one staff member and only mentioning the other staff members as co-conspirators.  Plaintiff noticed that "now" it was excepted (#12-01396), this time excepted with no notice of time constraints not met or threats of restriction appeal process.  Obviously plaintiff was forced to abandon #12-00665 and start another to enter (proceed).  Prison officials erred in the interpretation of regulation wich decided plaintiff's administrative appeal.[16]

6  ECF No. 60 at 16 (citations and internal quotation marks omitted):

7        Plaintiff relies on Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010), to contend that

8  this appeal was improperly rejected and cancelled by prison officials.  However, Nunez is

9  inapposite.  In that case, the Ninth Circuit held that an inmate's untimely exhaustion was excused

10  because he took "reasonable and appropriate steps to exhaust his [] claim and was precluded from

11  exhausting, not through his own fault but by the Warden's mistake" (the Warden relied on the

12  wrong program statement in denying plaintiff's appeal).  Id. at 1224.  The Court of Appeal held

13  that the Warden's mistake rendered prisoner's administrative remedies "effectively unavailable."

14  Id. at 1226.

15        In contrast, in the present case, plaintiff has submitted no evidence demonstrating that his

16  appeal was rejected or cancelled due to the mistake of a prison official, e.g., in applying prison

17  regulations.  Plaintiff's failure to submit evidence demonstrating that he complied with the

18  instructions set forth in the May 9, 2012 rejection notice renders unsupported his challenge to the

19  June 7, 2012 cancellation.  Without such evidence, this court is unable to examine the

20  appropriateness of the appeals coordinator's construction of the newly submitted appeal as a

21  challenge to the December 10, 2011 cell search (rather than a staff complaint), and its

22  cancellation for failure to abide by time limits.  See Cal. Code Regs. tit. 15, § 3084.8(b)(1) ("An

23

24  [16]  Plaintiff also argues, ECF No. 60 at 20 (sic) (internal citations omitted):
25
26
27

> These appeals coordinators (Lazano, Artis, Knipp) had erred in the interpretation of appeals #12-0065 (staff complaint "not" cell search complaint) wich left plaintiff no choice but to abandon #12-0065 because of threats and restart another and not being able to name more than one staff member for the first level of appeal (#12-01396).  Prison official erred in the interpretation of regulation wich decided plaintiff's administrative appeal.

28

1    inmate . . . must submit the appeal within 30 calendar days of . . . [t]he occurrence of the event or

2    decision being appealed").  In contrast to the circumstances in <u>Nunez</u>, plaintiff has failed to

3    demonstrate that Appeal Log No. MCSP-C-12-00665 was rejected or cancelled due the mistake

4    of a prison official.

5         Alternatively, plaintiff relies on <u>McBride v. Lopez</u>, 807 F.3d 982 (9th Cir. 2015), to

6    contend that he was deterred from pursuing Appeal Log No. MCSP-C-12-00665 by a threat of

7    retaliation from defendant Heath.  In <u>McBride</u>, the Ninth Circuit held that a prisoner may be

8    excused from exhausting administrative remedies if deterred by a threat of retaliation from a

9    prison official.  The court adopted the following two-part test, <u>McBride</u>, 807 F.3d at 987:

10              To show that a threat rendered the prison grievance system
11              unavailable, a prisoner must provide a basis for the court to find
                that he actually believed prison officials would retaliate against him
12              if he filed a grievance.  If the prisoner makes this showing, he must
                then demonstrate that his belief was objectively reasonable.  That
13              is, there must be some basis in the record for the district court to
                conclude that a reasonable prisoner of ordinary firmness would
14              have believed that the prison official's action communicated a
                threat not to use the prison's grievance procedure and that the
15              threatened retaliation was of sufficient severity to deter a reasonable
                prisoner from filing a grievance.

16        Plaintiff alleged in Appeal Log No. MCSP-C-12-00665 that Heath told him he had

17    searched plaintiff's cell, taken his personal property and left the cell in disarray because plaintiff

18    "went to the Sergeant."  <u>See</u> ECF No. 60 at 30-1.  Plaintiff now explains, <u>id.</u> at 15 (sic):

19              Heath verbally state[d] his reason for retaliation is because I had
                told the Sgt. on them [Heath and Bradley].  This statement and his
20              actions of taking personal property and leaving the cell in dissary
                after Bradley was just in there (wich Bradley did not take personal
21              property) is clearly a threat to never ever tell on him (them) and to
                instill fear to try to chill plaintiff from exerting his constitutional
22              rights.

23    Plaintiff contends that Heath's "distruction (sic) of plaintiff's cell along with the taking of

24    personal items and quotes from C/O Heath" were "threats" of retaliation under <u>McBride</u> that

25    prevented plaintiff from exhausting this appeal.  <u>Id.</u> at 13.

26        Plaintiff has presented no evidence to support a finding that he "actually believed prison

27    officials would retaliate against him if he filed [or attempted to exhaust] a grievance."  <u>McBride</u>,

28    807 F.3d at 987.  Plaintiff does not allege that the five-month delay in submitting his appeal after

1   the subject cell search reflected his fear of retaliation from Heath.  Moreover, after the appeal was

2   rejected, plaintiff attempted to submit it three more times.  Thereafter, he submitted and

3   exhausted Appeal Log No. MCSP-C-12-01396, in which he sought to submit a staff complaint

4   against defendant Heath and others.  This sequence of events does not support a reasonable

5   inference that plaintiff failed to exhaust Appeal Log No. MCSP-C-12-00665 because he "actually

6   believed" that Heath would retaliate against him.

7          Plaintiff next contends that he was physically prevented from exhausting this appeal due

8   to the "continuous searches" of his cell.  ECF No. 60 at 5.  This assertion finds some general

9   support in plaintiff's cell search exhibits to Appeal Log No. MCSP-C-12-01396 (and additional

10  cell search receipts submitted to this court),[17] which reflect that plaintiff's cell was repeatedly

11  searched during the relevant period, including from December 13, 2011 (when plaintiff

12  completed and signed Appeal Log No. MCSP-C-12-00665) to May 4, 2012 (when plaintiff

13  initially submitted this appea).  However, plaintiff does not rebut the reasonable inference that

14  these "Standard Cell Search" receipts reflect routine inmate cell searches.  More importantly,

15  plaintiff fails to explain how specific cell searches, or a specific series of cell searches, impaired

16  his ability to meet the requirements and deadlines in exhausting this appeal, and thus has

17  submitted no evidence to support a direct connection between the searches of his cell and his

18  failure to exhaust Appeal Log No. MCSP-C-12-00665.

19         For these several reasons, the court finds that plaintiff has failed to submit any evidence

20  supporting a reasonable inference that his failure to exhaust Appeal Log No. MCSP-C-12-00665

21  was due to official threat, mistake or other misconduct, rendering plaintiff's administrative

22  remedies effectively unavailable.  Therefore, plaintiff cannot rely on this appeal to demonstrate

23  that he exhausted his claims against any of the defendants in this action.

24

25  _____

26  [17]  Plaintiff's exhibits submitted to the court include copies of approximately fifty-five Standard
     Cell Search receipts spanning the period June 2008 to April 2013, including some of those
     attached to plaintiff's Appeal Log No. MCSP-C-12-01396.  See ECF No. 60 at 77-133 (Pl. Ex.
27  E).  Viewed in the light most favorable to plaintiff, these receipts appear to reflect a spike in the
     number of items confiscated from plaintiff's cell during the period December 2011 to July 2012.

28

1

     C.      Appeal Log No. MCSP-C-12-01396

2

     1.     Additional Facts

3

     Pursuant to the only relevant appeal that plaintiff fully exhausted, Appeal Log No. MCSP-

4

C-12-01396, plaintiff alleged that defendant Mendoza was harassing plaintiff based on his

5

commitment offense, and enlisting the support of other correctional officers or "co-conspirators."

6

Plaintiff alleged that Mendoza told him, "I reviewed your file on the computer and I don't like

7

your type." ECF No. 60 at 48. The appeal, completed by plaintiff on August 1, 2012, requested

8

that "C/O Mendoza . . . be sanctioned and retrained regard[ing] personal information kept within

9

inmates['] Central Files." Id. at 47. Plaintiff apparently attached to this appeal a "staff

10

complaint" he completed against Mendoza on August 1, 2012, and eleven "Standard Cell Search"

11

receipts, spanning a seven-month period from December 10, 2011 to July 22, 2012, intended to

12

support plaintiff's allegation of retaliatory searches by the other defendants.[18] See ECF No. 56-4

13

at 35, 40-50 (Elorza Decl., Ex. 3); ECF No. 56-5 at 34, 39-39 (Voong Decl., Ex. 3). However, no

14

correctional official other than Mendoza was named in this appeal.

15

     First Level Review of this appeal was bypassed, and plaintiff was so informed by notice

16

dated August 22, 2012, which provided that "this acts as a notice to you that your appeal has been

17

sent to the above staff for SECOND level response." ECF No. 60 at 49 (original emphasis).

18

---

19

[18] These "Standard Cell Search" receipts demonstrate that the cell plaintiff shared with his cellmate was searched on the following dates:

20
- December 10, 2011, by Bradley
- December 10, 2011, by Heath

21
- February 13, 2012, by Perez
- April 4, 2012, by Vallery

22
- May 9, 2012, by unnamed officer
- June 2, 2012, by Torres and Bradley.

23
- June 8, 2012, by Parciasepe
- June 15, 2012, by Heath

24
- June 16, 2012, by Bradley
- July 5, 2012, by Vallery

25
- July 22, 2012 by Vallery

26
Most of these searches included confiscation of "excess state food," particularly apples, butter, jelly, cookies and graham crackers, as well as pie tins and empty plastic containers. Plaintiff was reminded to stop hoarding state food. Plaintiff's headphones and hot pot were also confiscated,

27
as well as a broken nail clipper, altered razor blades and screws. Plaintiff apparently made apple pies, which he shared with staff. See ECF No. 60 at 161.

28

1    Plaintiff contends that "after the first level" review of this appeal, he attached five

2  additional staff complaints identifying the other five defendants challenged by this action.  See

3  ECF No. 60 at 2, 10 ("After plaintiff received back the 602 from First Level, plaintiff attached

4  five more citizen complaints. . . naming C/Os Heath, Bradley, Torres, Vallery and Lt. Perez, and

5  re-submitted the 602 to the Second Level."); see also ECF No. 67 at 2.  Plaintiff has submitted

6  copies of these additional staff complaints.  See ECF No. 60 at 56-61.  The initial staff complaint,

7  against defendant Mendoza, was dated and signed by plaintiff on August 1, 2012, then dated and

8  signed by defendant Correctional Lieutenant R. Perez, as the "receiving officer," on August 25,

9  2012.  Id. at 56; ECF No. 56-4 at 35.  The next staff complaint, against defendant Heath, was

10  signed by plaintiff on December 13, 2011, but does not bear the signature of a receiving staff

11  member.  ECF No. 60 at 57.  Similarly, the next four staff complaints, against defendants

12  Bradley, Torres, Perez and Vallery, were signed by plaintiff on June 19, 2012, but none bear the

13  signature of a receiving staff member.  Id. at 58-61.

14    Plaintiff was interviewed by defendant Perez on August 25, 2012 (the date he signed

15  plaintiff's staff complaint against defendant Mendoza) pursuant to the Second Level Review of

16  this appeal, and defendants Heath and Vallery were questioned as witnesses.  Id. at 50-1.  The

17  Second Level Decision, issued by MCSP Warden William Knipp on September 2, 2012,

18  "partially granted" the appeal on the ground that the requested inquiry had been completed;

19  however, it was concluded that defendant Mendoza had not violated CDCR policy.[19]

20

21  _____

[19]  The Second Level Decision provided in pertinent part, ECF No. 60 at 50:

> Inmate Garcia . . . alleges that Correctional Officer M. Mendoza
> acted unprofession[ally].  All issues unrelated to the allegation of
> staff misconduct must be appealed separately. . . .  You do not
> exhaust administrative remedies on any unrelated issue not covered
> in this response or concerning any staff member not identified by
> you in this complaint. . . .  You were interviewed on August 25,
> 2012, by Correctional Lieutenant R. Perez and you reiterated your
> concerns listed on the appeal . . .  You appeal is Partially Granted in
> that:  The Appeal Inquiry is complete, has been reviewed and all
> issues were adequately addressed.  The following witnesses were
> questioned:  Correctional Officer C. Heath and Correctional Officer
> V. Vallery. . . .  Staff did not violate CDCR policy with respect to
> one or more of the issues appealed . . . .  All staff personnel matters
> are confidential in nature. . . .

In his statement seeking Third Level Review, signed November 23, 2012,[20] plaintiff alleged:

> Since August 25, 2012, I have begun to experience harassment from inmate workers in my present assignment. . . . CDCR Officer Mendoza and co-conspirators knew or should know of the dangers. If I am attacked and harmed, I place the blame on Mendoza and co-conspirators. . . . I tried to protect myself from any further mistreatment by filing a 602 and it made the co-conspirators angry, they have committed numerous crimes to get me to stop legal action . . . [including] [h]arassment searches and leaving inmates' cells in disarray. . . .

See ECF No. 56-4 at 32 (Elorza Decl., Ex. 3); ECF No. 56-5 at 31 (Voong Decl., Ex. 3).

The Third Level Decision was issued on May 8, 2013, denying plaintiff's appeal based on a finding that the evidence continued to support the Second Level Decision that "CO Mendoza did not violate departmental policy."  See ECF No. 60 at 45-6; ECF No. 56-4 at 27-8 (Elorza Decl., Ex. 3); ECF No. 56-5 at 26-7 (Voong Decl., Ex. 3).  The Third Level summary of plaintiff's argument was limited to his allegations against defendant Mendoza.[21]

Plaintiff contends that prison officials reviewing this grievance thwarted his efforts to exhaust his claims against the moving defendants.

---

[20] After submitting his request for Third Level Review, plaintiff was twice informed that his documentation was inadequate.  On December 31, 2012, plaintiff was informed that his appeal had been rejected because his request for Third Level Review did not include copies of his First and Second Level Decision Letters.  See ECF No. 60 at 54.  On February 20, 2013, plaintiff was instructed to resubmit his appeal without including previously cancelled appeal forms.  Id. at 55.

[21] The Third Level Decision provides the following summary of plaintiff's claim:

> Appellant's Argument:  It is the appellant's position that he has been mistreated by Mule Creek State Prison (MCSP) Staff as a result of his sexual misbehavior conviction.  The appellant contends that in the latter part of 2011, Correctional Officer (CO) M. Mendoza caused him personal discomfort.  The appellant argues that abuse from CO M. Mendoza could have led to violence as CO Mendoza was attempting to enlist other COs in her dislike for sex offenders.  The appellant also claims that CO Mendoza specifically stated, "I reviewed your file on the computer and I don't like your type."  The appellant requests that CO Mendoza be retrained regarding personal information located in inmate files and that he receive monetary compensation relative to this appeal issue.

See ECF No. 60 at 45; ECF No. 56-4 at 27 (Elorza Decl., Ex. 3); ECF No. 56-5 at 26 (Voong Decl., Ex. 3).

2.      Analysis

Plaintiff's primary contention is that prison officials were timely informed that his Appeal

Log No. MCSP-C-12-01396 challenged the conduct of all six defendants, but failed to facilitate

and/or thwarted his efforts to exhaust his claims against any defendant but Mendoza.  Plaintiff

asserts that he "provide[d] all correctional officers names that he knew of, at the time of said

incidents and reserved his right to discover[] . . . the identit[ies] of remaining participants and

then provided . . . those additional names."  ECF No. 60 at 4.  He asserts that the Appeals

Coordinator was initially required to assist plaintiff in identifying the names of "Mendoza's co-

conspirators" by "making a reasonable attempt to identify the staff member(s) in question," under

Cal. Code Regs. tit. 15, § 3084.2(a)(3).  Id.

The regulation cited by plaintiff, Section 3084.2(a)(3), triggers the assistance of the

Appeals Coordinator to attempt to identify staff members challenged by an appeal when the

inmate makes clear that he "does not have the requested identifying information."  The contents

of plaintiff's appeal did not clearly trigger such assistance.  Although the appeal alleged that

Mendoza incited her "co-conspirators" to harass plaintiff, the only conduct clearly challenged was

that of Mendoza, underscored by the limited relief plaintiff sought, viz., that Mendoza be

"sanctioned and retrained."  It is not evident from a plain reading of the appeal that plaintiff was

also attempting to challenge the conduct of "Mendoza's co-conspirators," and plaintiff does not

aver that he expressly so informed any official involved in the review of this appeal.  Although

the cell search receipts for the period December 2011 to July 2012 provide support for plaintiff's

claim that the other defendants may have been engaged in "retaliatory harassment searches" at the

behest of Mendoza, plaintiff does not assert that he made this argument to any official during the

administrative processing of his appeal, for the purpose of directly challenging the conduct of the

"co-conspirators" in that appeal.

Plaintiff similarly contends that "the Appeals Coordinator improperly screened the

appeal," because "the appeals coordinator or any other prison official never directed plaintiff to

make corrections . . . or to specifically identify co-conspirators (defendants)," citing Sapp v.

Kimbrell, 623 F.3d 813 (9th Cir. 2010).  ECF No. 67 at 3.  The exception to administrative

1  exhaustion recognized by the Ninth Circuit in Sapp comes within the "third circumstance"

2  recognized by the Supreme Court in Ross, that is, that administrative remedies will be deemed

3  "effectively unavailable" if plaintiff can demonstrate "that he attempted to exhaust his

4  administrative remedies but was thwarted."  See Sapp, 623 F.3d at 822-24.  The Ninth Circuit

5  also requires demonstration of "a good-faith effort on the part of inmates to exhaust a prison's

6  administrative remedies as a prerequisite to finding remedies effectively unavailable."  Albino,

7  697 F.3d at 1035.  Here, plaintiff has presented no evidence that he made a good faith effort to

8  alert prison officials that the intended subjects of this appeal including the moving defendants.

9  More specifically, plaintiff does not assert that he relied on the eleven cell search receipts

10  attached to this appeal to specifically identify Mendoza's co-conspirators for the purpose of

11  directly challenging their conduct pursuant to this appeal.  Absent such averment, it is reasonable

12  to infer that prison officials construed the cell search receipts only as evidence in support of

13  plaintiff's misconduct claim against Mendoza.  Plaintiff has submitted no evidence to rebut the

14  reasonable construction of plaintiff's appeal as limited to the alleged misconduct of defendant

15  Mendoza.

16      Plaintiff alternatively contends that he was thwarted in his attempt to identify and

17  incorporate the other defendants by submitting, "after First Level Review," five additional staff

18  complaints.  See ECF No. 60 at 2, 10, 17; ECF No. 67 at 2.  Plaintiff alleges that, after First Level

19  Review, he "returned" his appeal for Second Level Review with the new staff complaints

20  attached, but that Lt. Perez (who was identified in one of the staff complaints) refused to sign

21  them, demonstrating a conflict of interest, and preventing plaintiff from pursuing his claim

22  against the other defendants.  ECF No. 60 at 17.  Plaintiff asserts that when he later identified the

23  other defendants by submitting the additional staff complaints, ECF No. 60 at 4-5, he had "no

24  control over staff refusing to sign them or and stamp them into and for logging purposes (sic),"

25  ECF No. 67 at 2.

26      This contention is burdened by two apparent inconsistencies.  First, the timing of

27  plaintiff's attempted submission remains unclear.  The record demonstrates that First Level

28  Review was bypassed and plaintiff's appeal was automatically assigned for Second Level

1    Review, without requiring any additional action by plaintiff.  While it is possible that plaintiff

2    sought to submit the new staff complaints at his August 25, 2012 interview with Perez pursuant to

3    Second Level Review, plaintiff does not so state.  The additional staff complaints are not part of

4    the official appeal record.  ECF No. 63 at 3.  Second, this contention is inconsistent with

5    plaintiff's prior argument that he could not identify these five officials when he initially submitted

6    this appeal, which is itself inconsistent with plaintiff's arguments in support of Appeal Log No.

7    MCSP-C-12-00665, and with the fact that each of these officials was clearly identified on

8    plaintiff's cell search receipts issued prior to the date plaintiff initially submitted this appeal.

9         The Second Level Decision addressed plaintiff's allegations against Mendoza only, and

10   specifically informed plaintiff that, "You do not exhaust administrative remedies . . . concerning

11   any staff member not identified by you in this complaint."  ECF No. 60 at 50.  Assuming this

12   response was directed to plaintiff's attempted submission of the additional staff complaints at

13   Second Level Review, it was consistent with the regulations, which direct that supporting

14   documents attached to an appeal "shall not raise new issues, but shall only serve to clarify the

15   present appeal issue and action(s) requested as stated in Parts A and B of the Inmate/Parolee

16   Appeal form.  New issues raised in the supporting documents shall not be addressed and any

17   decision rendered will pertain only to the present appeal issue and requested action(s)."  Cal.

18   Code Regs. tit. 15, § 3084.2(b)(1).

19        If plaintiff was concerned that consideration of his appeal inappropriately excluded the

20   other defendants, it is reasonable to assume that he would have clarified this in his Statement of

21   Dissatisfaction with the Second Level Response.  However, plaintiff's statement again made only

22   general allegations against "Mendoza and her co-conspirators."  Plaintiff generally alleged that

23   Mendoza and her co-conspirators had incited other inmates to harass him, and that plaintiff's

24   pursuit of the appeal had "made the co-conspirators angry," resulting, inter alia, in the conduct of

25   retaliatory "harassment searches."  See ECF No. 56-4 at 32 (Elorza Decl., Ex. 3); ECF No. 56-5

26   at 31 (Voong Decl., Ex. 3).  As a result, the Third Level Decision, like the Second Level

27   ////

28   ////

1   Decision, was limited to plaintiff's allegations against Mendoza.[22]  See ECF No. 60 at 45-6; ECF

2   No. 56-4 at 27-8; ECF No. 56-5 at 26-7.  See also Cal. Code Regs. tit. 15, § 3084.2(b)(1)

3   (supporting documents shall not raise new issues).

4          Plaintiff contends alternatively that he should not be penalized for attempting to comply

5   with the requirement that his appeal be limited to "one issue or related set of issues" (citing Cal.

6   Code Regs. tit. 15, § 3084.2(a)).  He asserts that his grievance "concerned facts of one claim but

7   contained multiple issues."  ECF No. 67 at 7.  Plaintiff asserts that requiring him "to grieve each

8   of [the] alleged components of his punishment separately would have prevented him [from] fairly

9   presenting his claim entirely."  Id.  He also explains that he grieved "[o]ne issue (retaliation) but

10  different violations and at different times, most committed after first level and after third level

11  completion."  Id. at 5.  Plaintiff further asserts that there were "[n]ew violations by defendants

12  after the appeal had completed all three levels.  All conspiring to chill plaintiff from exerting his

13  1st Amendment right[.]"  Id. at 6.

14         Although CDCR regulations limit an appeal to "one issue or related set of issues," see Cal.

15  Code Regs. tit. 15, § 3084.2(a)(1), the regulations permit an appeal to list multiple staff members

16  "involve[]ed in the issue," id., § 3084.2(a)(3).  These regulations did not preclude plaintiff from

17  clearly alleging, in one appeal, a campaign of retaliatory harassment by all of the defendants.

18  Moreover, plaintiff was not precluded from filing additional separate appeals based on new

19  violations by the same defendants.  See id., § 3084.1(f) ("An inmate or parolee has the right to

20  file one appeal every 14 calendar days[.]").

21  [22]  Plaintiff has submitted copies of some of his mental health records.  See ECF No. 60 at 65-76

22  (Pl. Ex. D).  These include treatment notes dated May 16, 2013 (8 days after issuance of the Third
    Level Decision in Appeal Log No. MCSP-C-12-01396) reporting that:  (1) Plaintiff "feels the

23  COs have let his charges be known on the yard and has safety concerns.  Feels victimized by
    justice system."  (Id. at 72); (2) Plaintiff experiences a "stressor [that] appears to be chronic in

24  terms of friction with the COs."  (Id. at 74); and (3) Plaintiff [h]as been having difficulties with
    building COs resulting in the destruction of his personal property and fighting a 602.  He report[s]

25  COs have let his charges be known on the yard and he has concern for his safety.  Also he is
    trying to write an appeal but feels overwhelmed by the task."  (Id. at 75).  While this information

26  may be relevant to the substance of plaintiff's claims against defendant Mendoza (and against the
    other defendants had plaintiff exhausted his claims against them), it is not relevant to the current

27  question of administrative exhaustion.

28

24

Next, plaintiff contends that he was not required to name each of the defendants in his appeal to exhaust his claims against them, citing Jones, supra, 549 U.S. 199. See ECF No. 67 at 4. In Jones, the Supreme Court held that "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances," 549 U.S. at 219; see also id. at 217 ("nothing in the [PLRA] imposes a 'name all defendants' requirement"). However, in the same case, the Supreme Court emphasized that, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id. at 218. In California, prisoners are required to provide the challenged "staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal." Cal. Code Regs. tit. 15, § 3084.2(a)(3). In the Ninth Circuit, a prisoner's failure to comply with this or any other procedural requirement will not preclude a finding of exhaustion as to a particular claim or defendant *if* prison officials addressed the merits of the appeal as to that claim and/or defendant. See Reyes v. Smith, 810 F.3d 654 (9th Cir. 2016). "[I]f prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process," then the prisoner has exhausted "such administrative remedies as are available." Id. at 658.

In evaluating plaintiff's contention under Jones that he should not be foreclosed from pursuing his civil rights claims against defendants unnamed in his appeal, this court must, under Reyes, assess whether these claims may reasonably be construed to have been administratively exhausted on the merits, by evaluating the allegations of the appeal in tandem with the substance of the appeal decisions. In the present case, for the reasons set forth above, such evaluation demonstrates that only plaintiff's allegations against Mendoza were exhausted in Appeal Log No. MCSP-C-12-01396; the appeal did not address the merits of any putative claim against any other defendant.

Finally, plaintiff claims that he named all the defendants "in an interview with Captain Cherry." ECF No. 67 at 6. However, nothing in the record supports this assertion. Captain Cherry is not identified as a participant or interviewer at the Second or Third Level Review of

1    plaintiff's appeal.  The only other record reference to Captain Cherry is a copy of plaintiff's June

2    2012 letter to the Captain, requesting a cell move, with a passing and unrelated reference to only

3    one defendant, Bradley.  See CF No. 60 at 169-61 (Pl. Ex. H).

4         For these several reasons, this court finds that plaintiff has presented no evidence

5    supporting a reasonable inference he was thwarted by prison officials from fully exhausting

6    Appeal Log No. MCSP-C-12-01396.  As construed by reviewing officials at MCSP, the court

7    finds that this appeal exhausted only plaintiff's retaliation claim against defendant Mendoza.

8              D.    Summary

9         Plaintiff has not met his burden of presenting evidence demonstrating a material factual

10   dispute whether MCSP's administrative remedies were effectively unavailable to exhaust his

11   claims against defendants Bradley, Heath, Perez, Torres and Vallery in this action.  Albino, 747

12   F.3d at 1172.  As a result, the court further finds defendants have met their ultimate burden of

13   proving that there was an available administrative remedy that plaintiff did not fully utilize and

14   exhaust.  Id.  Because plaintiff failed to comply with the requirement of the PLRA that he exhaust

15   his available administrative remedies against defendants Bradley, Heath, Perez, Torres and

16   Vallery before commencing this suit, see 42 U.S.C. § 1997e(a), defendants' motion for summary

17   judgment should be granted.

18        VI.   Conclusion

19        For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

20        1.  The motion for summary judgment filed by defendants Bradley, Heath, Perez, Torres

21   and Vallery, ECF No. 56, be granted;

22        2.  Defendants Bradley, Heath, Perez, Torres and Vallery be dismissed from this action;

23   and

24        3.  This action proceed only against defendant Mendoza on plaintiff's retaliation claims.

25        These findings and recommendations are submitted to the United States District Judge

26   assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

27   after being served with these findings and recommendations, any party may file written

28   objections with the court.  Such a document should be captioned "Objections to Magistrate

Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 17, 2016

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE